IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-03013-PAB-NRN

CARTER BELL,

    Plaintiff,

v.

MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, a Massachusetts corporation,

    Defendant.

# ORDER

This matter comes before the Court on Defendant's Motion for Partial Summary Judgment [Docket No. 40]. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. PROCEDURAL HISTORY

Plaintiff Carter Bell initiated this action in October 2020 against defendant Massachusetts Mutual Life Insurance Company ("MassMutual"), bringing claims against the insurance company for breach of contract, common law bad faith breach of insurance contract, and statutory bad faith delay or denial of insurance benefits. Docket No. 5 at 7-8, ¶¶ 49-65. MassMutual seeks summary judgment on Mr. Bell's claims to the extent that they apply to MassMutual's initial denial of Mr. Bell's claim in December 2019. Docket No. 40 at 5 n.3.

II.  **FACTS**[1]

Plaintiff Carter Bell is insured under two disability insurance policies purchased from MassMutual.  Docket No. 40 at 2, ¶ 1.  The insurance policies contain a rider that excludes coverage for disabilities "contributed to or caused by" by disorders enumerated in the APA Diagnostic and Statistical Manual of Mental Disorder ("DSM") [2]:

> The insurance will not cover any disability contributed to or caused by a condition assigned a diagnosis and/or diagnostic code included within the following categories or sub-categories of diagnoses in the APA Diagnostic and Statistical Manual of Mental Disorder [the "DSM"]: Learning Disorders; Attention-Deficit Hyperactivity Disorder; Disruptive Behavior Disorders; Personality Disorders; Substance-Related Disorders; Schizophrenia and other Psychotic Disorders; Mood Disorders; Anxiety Disorders; Somatoform Disorders; Factitious Disorders; Dissociative Disorders; Sexual and Gender Identity Disorders; Eating Disorders; Impulse-Control Disorders; and Adjustment Disorders. If that manual is discontinued, we will use the replacement chosen by the APA.

*Id.*, ¶ 3.

On June 29, 2019, Mr. Bell submitted a claim for disability benefits to MassMutual, asserting a work disability that began in February 2019.  Docket No. 44 at 7, ¶ 26.  In August 2019, Mr. Bell was evaluated by physicians at the Mayo Clinic and was diagnosed with Functional Neurological Conversion Disorder ("FND").[3]  Docket No.

---

[1] The following facts are undisputed unless otherwise noted.
[2] The Diagnostic and Statistical Manual of Mental Disorders, promulgated by the American Psychiatric Association ("APA"), is a "basic text[] used by psychiatrists and other experts," *Hall v. Florida*, 572 U.S. 701, 704 (2014), and by courts as a source of medical diagnostic standards.  *See Moore v. Texas,* 581 U.S. 1, 7 (2017).
[3] Mr. Bell admits that he was diagnosed with FND by Mayo Clinic physicians, but denies that the diagnosis was correct and that it contributed to his disability.  Docket No. 44 at 2.  Not only is this, in part, an improper relevancy objection, but Mr. Bell cites no evidence to support his partial denial.  *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.F.3.b.iv ("Any denial shall be accompanied by a **brief** factual explanation of the reason(s) for the denial and a **specific reference** to material in the record supporting the denial."); Fed. R. Civ. P. 56(c)(1)(A).  The Court therefore deems this fact admitted.

40 at 2-3, ¶¶ 5-6.  FND is identified in the DSM.[4]  Docket No. 40 at 3, ¶ 7.  Mr. Bell was also diagnosed with complex migraine syndrome in 2019 by multiple doctors.  Docket No. 44 at 6, ¶ 24.  In late October 2019, Mr. Bell received treatment from an ear, nose, and throat ("ENT") doctor, Eric Lupo.  *Id.* at 2, ¶ 2.  In November 2019, Mr. Bell began receiving treatment from a vestibular physical therapist, Lindsey Attebery, PT, DPT.[5]  *Id.*, ¶ 3.  In November 2019, Dr. Attebery informed Mr. Bell that she "questioned whether his medical condition was related to pressure fluctuations from cerebral spinal fluid, not a psychiatric condition."  *Id.* at 3, ¶ 4.  On November 13, 2019, a MassMutual underwriting consultant wrote an email that Mr. Bell's claim was "a complex situation" and that she thought it was a "stretch" to tie his disability to the rider.  *Id.* at 4, ¶ 12.

On November 25, 2019, Mr. Bell informed a MassMutual claims examiner by telephone that "he had been seeing a physical therapist and an ENT doctor who believed that he had a problem with his vestibular system, which was not processing information properly and could be tied to his migraines."  *Id*. at 3, ¶ 5.  The claims examiner documented the telephone call in Mr. Bell's claim file and informed Mr. Bell that he could submit the records from his physical therapist if he wanted to.  *Id.*, ¶¶ 5-6.  Mr. Bell submitted a medical record from Dr. Attebery to MassMutual on December 3, 2019, the day after MassMutual decided to deny his claim.  *Id.* at 4, ¶ 13; Docket No. 40 at 3, ¶ 8.

---

[4] Mr. Bell neither admits nor denies this fact.  Docket No. 44 at 2.  The Court's Practice Standards require that a party responding to a summary judgment motion must either admit or deny the movant's statements of undisputed facts.  *See* Practice Standards (Civil case), Chief Judge Philip A. Brimmer, § III.F.3.b.iv.  Because Mr. Bell failed to follow the Practice Standards, the Court deems this fact admitted.
[5] A "DPT" is a doctor of physical therapy.

MassMutual determined that Mr. Bell's claim would be denied on December 2, 2019.  Docket No. 40 at 3, ¶ 8.  MassMutual informed Mr. Bell of the denial in a letter dated December 3, 2019.  *Id.*, ¶ 9.  MassMutual denied Mr. Bell's claim on the basis of the rider modifying both of his disability insurance policies.  *Id.*, ¶ 8.  The rider excludes coverage for any disability "contributed to or caused by" somatoform disorders.  *Id.* at 2, ¶ 3.  MassMutual determined that Mr. Bell's claim was not covered "because [his] diagnosis of FND is classified as a somatoform/conversion disorder that is excluded under the Policies' Riders."  *Id.* at 3, ¶ 8 (footnote omitted).

After Mr. Bell's claim was denied, he received diagnoses for three conditions that are not enumerated in the DSM.  Docket No. 44 at 4-5, ¶¶ 15-18.  Mr. Bell was diagnosed with Persistent Postural-Perceptual Dizziness ("PPPD") by Dr. Lupo on December 18, 2019 and by neurologist Nathan Kung on January 10, 2020.  *Id.* at 4, ¶¶ 15-16.  Mr. Bell was diagnosed with a cerebral spinal fluid leak on February 6, 2020 and Eagle's Syndrome on September 29, 2020 by another ENT specialist, Edward Hepworth.  *Id.* at 5, ¶ 18.  In early 2022, Dr. Kung and Mr. Bell's primary care physician, Dr. Pierre Brunschwig, each wrote reports stating that the Mayo Clinic's initial diagnosis of FND was incorrect.  *Id.* at 6, ¶¶ 21-22.

**III. LEGAL STANDARD**

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.

4

*Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115.  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*

## IV.  ANALYSIS

MassMutual seeks summary judgment on all three of Mr. Bell's claims with respect to its initial denial of coverage in December 2019.  *See generally* Docket No. 40.

### A.  Breach of Contract

Under Colorado law, a breach of contract claim has the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform by the defendant; and (4) damages to the plaintiff. *W. Distrib. Co. v. Diodosio,* 841 P.2d 1053, 1058 (Colo. 1992). Here, the parties dispute only whether MassMutual failed to perform under the insurance contract when it denied Mr. Bell's claim. Docket No. 44 at 11.

An insured must establish coverage under the insurance policy to prevail in a breach of contract action against an insurer. *Jenkins v. State Farm Fire & Cas. Co.,* No. 15-cv-02691-CMA-NYW, 2017 WL 11544767 (D. Colo. May 31, 2017). Mr. Bell's insurance policies contain the following rider:

> **The insurance will not cover any disability contributed to or caused by** a condition assigned a diagnosis and/or diagnostic code included within the following categories or sub-categories of diagnoses in the APA Diagnostic and Statistical Manual of Mental Disorder [the "DSM"]: Learning Disorders; Attention-Deficit Hyperactivity Disorder; Disruptive Behavior Disorders; Personality Disorders; Substance-Related Disorders; Schizophrenia and other Psychotic Disorders; Mood Disorders; Anxiety Disorders; **Somatoform Disorders**; Factitious Disorders; Dissociative Disorders; Sexual and Gender Identity Disorders; Eating Disorders; Impulse-Control Disorders; and Adjustment Disorders. If that manual is discontinued, we will use the replacement chosen by the APA.

Docket No. 40 at 2, ¶ 3 (emphasis added).  "The interpretation of an insurance contract is a question of law."  *USAA Cas. Ins. Co. v. Anglum,* 119 P.3d 1058, 1059 (Colo. 2005).[6]  Insurance policies are to be interpreted in accordance with general rules of

---

[6] The parties appear to agree that Colorado law applies to the breach of contract claim in this case. The Court will operate under the same premise. *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

contract interpretation and "must be enforced as written unless there is an ambiguity in the policy language." *Id.* The parties do not claim the policies are ambiguous and the Court does not find that the policy language is "susceptible on its face to more than one reasonable interpretation." *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005) ("An insurance policy is ambiguous if it is susceptible on its face to more than one reasonable interpretation.") (citation omitted). Accordingly, the MassMutual policies, including the rider, "must be enforced as written." *Anglum,* 119 P.3d at 1059.

The rider states that MassMutual will not cover any disability that is "contributed to or caused by" by a somatoform disorder.[7] Docket No. 40 at 2, ¶ 3. The insurance contract permits MassMutual to deny a claim for disability if that disability is the result of a somatoform disorder alone or the result of a somatoform disorder that is combined with some other ailment. *Cf. Salzer v. Milwaukee Ins. Co. of Milwaukee, Wis.*, 25 A.D.2d 802, 802 (N.Y. App. Div. 1966) (holding that a policy excluding coverage for disabilities "caused or contributed to by disease" permitted an insurer to deny coverage where "disablement was the result of the combined effects of accident and a pre-existing disease") (applying New York law). Therefore, to prevail on his breach of contract claim, Mr. Bell must be able to show that, at the time that MassMutual denied his insurance claim, MassMutual had reason to believe that FND neither caused nor contributed to his disability.[8] *See Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 848 (Colo.

---

[7] According to the DSM, somatoform disorders, now referred to as "somatic symptom and related disorders," are characterized by "the prominence of somatic symptoms associated with significant distress and impairment." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders,* 309 (5th ed. 2013).

[8] Mr. Bell claims that summary judgment is improper if FND only "contributed to" his disability because the policies "do not preclude coverage if more than one cause of a disability exists." Docket No. 44 at 15. This assertion is contrary to the plain

7

2018) ("insurer's decision to deny benefits to its insured must be evaluated based on the information before the insurer at the time of that decision") (citation omitted); *see also Peiffer v. State Farm Mut. Auto. Ins. Co.*, 940 P.2d 967, 970 (Colo. App. 1996); *State Farm Mut. Auto. Ins. Co. v. Reyher*, 266 P.3d 383, 390 (Colo. 2011).

Mr. Bell argues that the Court should deny MassMutual's motion for summary judgment because "disputed issues of fact remain . . . regarding whether Bell ever suffered from FND or a psychiatric condition[ ] and whether the Modification of Coverage rider applies." Docket No. 44 at 8.  To support this argument, Mr. Bell recounts three diagnoses for physical ailments that he received in 2020 and references doctors' records from 2022 wherein the physicians opined that his FND diagnosis was incorrect. *Id*.  This evidence is irrelevant to MassMutual's motion for summary judgment since the motion pertains only to MassMutual's initial decision to deny Mr. Bell's claim on December 2, 2019.  The question is not whether Mr. Bell's FND diagnosis was correct, but rather whether MassMutual breached its contract with Mr. Bell when it denied his claim on the basis of the only diagnosis Mr. Bell had received at the time of MassMutual's decision—FND.

As discussed above, the rider permits MassMutual to deny a disability claim where FND causes or contributes to the claimant's disability because FND is a somatoform/conversion disorder.  *See* Docket No. 40 at 2-3, ¶¶ 2-3, 7-8.  It is undisputed that Mr. Bell was diagnosed with FND on August, 15, 2019.  *Id.* at 3, ¶ 6.  It

---

language of the rider.  To support this assertion, Mr. Bell points out that "the policies contemplate that a disability may contain more than one cause," *id*. at 16, but, as explained above, the policy excludes coverage even where there are multiple causes of a disability if one of those causes is a somatoform disorder.

is also undisputed that MassMutual denied his claim on the basis of Mr. Bell's diagnosis of FND.  *Id.*, ¶ 8.  It is further undisputed that Mr. Bell did not receive diagnoses for any other causes of his disability until after MassMutual denied his claim.  Docket No. 44 at 4-5, ¶¶ 15-16, 18.  Therefore, Mr. Bell raises no genuine issue of disputed fact that MassMutual breached the contract merely by denying Mr. Bell's claim on the basis of his FND diagnosis.

  Mr. Bell argues that MassMutual breached the insurance contract because Mr. Bell informed MassMutual of his "non-psychiatric medical concerns" prior to the denial of his claim and MassMutual failed to investigate these concerns before denying his claim on the basis of his FND diagnosis.  *Id.* at 12.  Mr. Bell called MassMutual on November 25, 2019 and explained to a claims examiner that he had "been seeing a physical therapist and an ENT doctor who believed that he had a problem with his vestibular system, which was not processing information properly and could be tied to his migraines."  *Id.* at 3, ¶ 5.  However, Mr. Bell has not identified any evidence that he told MassMutual before December 2, 2019 that FND did not cause or contribute to his disability.  At most, Mr. Bell has cited evidence that his telephone call alerted MassMutual to the potential that he suffered from a problem with his vestibular system in addition to his existing diagnosis of FND.

  Nevertheless, Mr. Bell claims that a reasonable fact-finder could conclude that MassMutual breached the insurance contract because it did not conduct an investigation into Mr. Bell's potential vestibular problem after his telephone call alerted

MassMutual to his physical therapist's and ENT doctor's suspicions. *Id*. at 12.[9]  Mr. Bell claims that this failure constituted a violation of "an insurer's contractual obligation and duty to investigate and pay insurance benefits." *Id.* at 13.  MassMutual responds that, even after receiving the telephone call relaying the physical therapist's purported concerns, MassMutual received no information indicating that Mr. Bell's disability "was caused solely by a physical condition and *not* caused by or contributed to by a psychiatric condition."  Docket No. 48 at 5.

MassMutual's argument is borne out by the facts surrounding the telephone call on November 25, 2019.  Docket No. 44 at 3, ¶ 5.  Mr. Bell claims, and MassMutual admits, that he told the claims examiner that his physical therapist and ENT doctor suspected problems with his vestibular system, but Mr. Bell does not allege that he told MassMutual that those problems, and not FND, could be the cause of his disability.  *Id*.; Docket No. 48 at 2, ¶ 5.  Mr. Bell has cited no evidence that his telephone call contained any information contradicting MassMutual's conclusion that FND caused or contributed to his disability.  Accordingly, Mr. Bell has failed to raise a disputed issue of material fact suggesting that his telephone call alerted MassMutual to the possibility that the rider would not apply to his claim.

---

[9] In addition to the telephone call, Mr. Bell references the medical record from his physical therapist that he submitted to MassMutual on December 3, 2019.  Docket No. 44 at 12.  However, Mr. Bell has admitted that MassMutual made the decision to deny his claim on December 2.  *Id.* at 1; Docket No. 40 at 3, ¶ 8.  Any materials Mr. Bell submitted to MassMutual after December 2, 2019 is therefore irrelevant to MassMutual's motion for summary judgment.  Furthermore, even if it was relevant, the medical record does not mention Mr. Bell's FND diagnosis, much less hypothesize that FND did not cause or contribute to Mr. Bell's disability.  Docket No. 44-8 at 2-3.

Furthermore, Mr. Bell has cited no statute or caselaw indicating that an insurer violates its duty to investigate insurance benefits when it fails to investigate new allegations made by the insured that, if true, would have no effect on the outcome of the claim determination.  The Court is similarly unaware of any controlling authority to this effect.

Thus, MassMutual has demonstrated that there is no genuine issue of fact as to whether its initial denial of Mr. Bell's disability claim breached the insurance contract.  MassMutual is therefore entitled to summary judgment as a matter of law.

### B.  Bad Faith Breach of Insurance Contracts and Statutory Improper Denial of Claims

Mr. Bell's second claim for relief is bad faith breach of insurance.  Docket No. 5 at 7-8, ¶¶ 54-57.  "It is settled law in Colorado that a bad faith claim must fail if . . . coverage was properly denied."  *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009).  Because the Court has found that MassMutual did not breach the insurance contract when it denied Mr. Bell's claim in December 2019, the Court will grant MassMutual's motion for summary judgment on Mr. Bell's second claim (common law bad faith breach of insurance) with regard to MassMutual's initial decision to deny Mr. Bell's insurance benefits.

Mr. Bell's third cause of action is for unreasonable delay and denial of his claim for benefits under Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116.  Docket No. 5 at 8, ¶¶ 58-65.  The Court has found that MassMutual's initial decision to deny Mr. Bell's benefits did not breach the insurance contract.  Moreover, Mr. Bell does not argue that MassMutual unreasonably delayed a decision on his insurance claim.  *See* Docket No. 44 at 12 (arguing that MassMutual "rushed to decline coverage").  Accordingly, the

Court will grant MassMutual's motion for summary judgment on Mr. Bell's statutory claim with regard to MassMutual's initial decision to deny Mr. Bell's benefits.

## V. CONCLUSION

Therefore it is

**ORDERED** that Defendant's Motion for Partial Summary Judgment [Docket No. 40] is **GRANTED**.

DATED March 10, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge